Steven M. Hecht (SH-0414)
Jason Halper (JH-9957)
**LOWENSTEIN SANDLER PC**
Attorneys at Law
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
*Attorneys for Plaintiff*
*FaceTime Communications, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FACETIME COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> REUTERS LIMITED, <br><br> Defendant. | ECF CASE <br> Civil Action No. 08-4730 (CM) <br><br> **COMPLAINT** <br><br> **DEMAND FOR TRIAL BY JURY** |

Plaintiff FaceTime Communications, Inc. ("FaceTime"), for its complaint against Defendant Reuters Limited ("Reuters"), avers as follows:

### INTRODUCTION

1. The sole question in this declaratory judgment action is whether the parties' written Source Code Licensing Agreement (the "Agreement") has expired. The answer to that question is found in the plain language of the parties' Agreement and the undisputed facts of this case -- which establish quite clearly that the Agreement has expired according to its terms.

2. As outlined below, the Agreement had a two-year term, and provided Defendant Reuters with a non-exclusive license to use FaceTime's proprietary source code in connection with Reuters' instant messaging network for financial professionals. The Agreement also provided Reuters with an option to extend the license in perpetuity, provided that Reuters exercised its option and made a one-time payment of $150,000 *before* the Agreement's two-year

term expired on January 31, 2008. It is undisputed that Reuters failed to exercise its option or make the required payment by the contractual deadline.

3. The Agreement therefore expired on January 31, 2008. Through this action, FaceTime seeks a declaration from the Court that the Agreement terminated as of that date, and that Reuters must cease using FaceTime's source code and any other "Licensed Materials" in accordance with the parties' contract.

## THE PARTIES

4. Plaintiff FaceTime is a Delaware corporation with its principal place of business at 1301 Shoreway Road, Suite 275, in Belmont, California. FaceTime is a leading provider of compliance and security solutions software products, which enable businesses to manage their employees' use of instant messaging, Internet applications, and other network applications such as peer-to-peer file sharing and "voice over IP" phones. FaceTime's software solutions are used by more than 900 customers, including major U.S. financial institutions, for security, management and compliance of real-time communications.

5. Defendant Reuters is a global news and financial data service organization. Reuters is a company formed and existing under the laws of England, with a registered office at The Reuters Building, South Colonnade, Canary Wharf London E14 5EP, in the United Kingdom. Reuters' headquarters in the United States is located at The Reuters Building, Three Times Square in New York, New York. Reuters is, and at all relevant times was, part of the Reuters Group of companies, which recently completed a merger transaction with Thomson Corporation.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to the diversity statute, 28 U.S.C. §1332(a)(2), in that there is diversity of citizenship between the parties. Specifically: *(1)* Plaintiff FaceTime is a citizen of the States of Delaware and California, *(2)* Defendant Reuters is a citizen of the United Kingdom with a place of business in the State of New York, and *(3)* the amount in controversy exceeds the sum of $75,000.

7. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(a)(2), in that a substantial part of the events giving rise to FaceTime's claim occurred in Manhattan. Venue is also proper in the Southern District of New York under 28 U.S.C. §§ 1391(a)(1) and 1391(c), in that Defendant Reuters is a corporation that is deemed to "reside" in the Southern District of New York because, as explained below, it is subject to personal jurisdiction in this District.

8. This Court has personal jurisdiction over Defendant Reuters given that Reuters has its U.S. headquarters at Three Times Square in New York, New York. In addition, Section 12.6 of the parties' Agreement expressly provides that "[a]ny and all disputes arising between the Parties hereunder shall be finally and exclusively settled in, *and each Party hereby irrevocably submits to the personal jurisdiction of, the state and federal courts located in the county of New York, New York.*" (emphasis added).

## FACTUAL BACKGROUND

### A. Reuters' Instant Messaging Service and FaceTime's Compliance and Security Solutions

9. Instant messaging, once the province of chatty teenagers, has now become part and parcel of advanced communications networks at many corporations. Financial services businesses are leading users of instant messaging. Instead of using more traditional phone or e-

-3-

mail communications, many market professionals now use instant messaging as a faster and more efficient way to communicate with their customers, colleagues and market contacts.

10. Reuters provides an instant messaging service for financial professionals called "Reuters Messaging," which allows those professionals to communicate in "real time" over the Internet. The Reuters Messaging service is connected with three of the largest instant messaging vendors -- AOL Instant Messenger, Yahoo! Messenger and MSN Messenger. As such, financial professionals using the Reuters service can "IM" with their counterparts in the Reuters Messaging community, as well as those using the AOL, Yahoo! or MSN networks.

11. As instant messaging networks such as Reuters Messaging grew in popularity among banks, broker/dealers, mutual funds and investment advisors, there arose the need for compliance solutions that allow those financial services industries to log and audit the instant messages to comply with the regulatory requirements of the Securities and Exchange Commission, New York Stock Exchange, Sarbanes-Oxley Act of 2002, and the like. FaceTime developed a compliance solution for such requirements and has successfully marketed it to financial services businesses, including a significant number of Reuters Messaging customers.

12. With increased use has also come an increased risk of malicious use, including unsolicited messages, electronic viruses or worms, and spyware transmitted through instant messaging. The hacker and virus-writing communities have wasted no time in exploiting these vulnerable channels. Through its proprietary software, FaceTime also offers security solutions for instant messaging networks.

B. **The Source Code Licensing Agreement and Reuters' Option to Purchase**

13. To better ensure the compliance needs of Reuters Messaging customers and the security of its instant messaging network, Reuters sought to acquire a license to use

FaceTime's proprietary source code for certain FaceTime software products designed to provide such compliance functionality and protect instant messaging applications.

14. Accordingly, the parties entered into the Source Code Licensing Agreement, dated January 31, 2006, in which FaceTime agreed to provide Reuters with a non-exclusive license to use certain FaceTime source code and other "Licensed Materials." In exchange, Reuters agreed to make eight separate payments to FaceTime totaling $1.3 million. There is no dispute that those payments have been made.

15. Pursuant to Section 8.1 of the Agreement, the term of the license was for a period of two years. Section 6.2 of the Agreement, in turn, provided Reuters with an irrevocable option to purchase a perpetual, non-exclusive license to use the FaceTime source code and "Licensed Materials" set forth in the Agreement for a one-time payment of $150,000.

16. However, the Agreement specified that Reuters had to exercise its option by a specific date. In particular, Section 6.2 of the Agreement provided that:

> Reuters shall have the right to exercise its Perpetual License Option at any time prior to January 31, 2008 and must make payment to FaceTime of the Perpetual License Fees on or before January 31, 2008, unless such date is extended by operation of the express terms of this Agreement.

17. Section 6.2 therefore clearly and unambiguously provided that Reuters' option to purchase a perpetual license from FaceTime had to be exercised *before* January 31, 2008, *and* Reuters had to make a $150,000 payment to FaceTime *before* the January 31, 2008 deadline for the option to be properly exercised.

18. The parties expressly recognized that the Agreement would terminate according to its terms if Reuters failed to properly exercise its option to purchase a perpetual license. Specifically, Section 6.2 of the Agreement goes on to state that:

> *In the event that Reuters elects not [to] exercise its Perpetual License Option or fails to make payment of the Perpetual License Fee when due, Reuters license to use the Licensed Materials shall terminate on such date,* provided that such license termination shall not affect Reuters' right, title or interest in any intellectual property of whatever nature in the Derivative Works exclusive of the Licensed Materials.

Agreement § 6.2 (emphasis added).

### C. Reuters' Failure to Exercise Its Option By The Contractual Deadline

19. Reuters did not exercise its option or make a $150,000 payment to FaceTime to purchase a perpetual license before the January 31, 2008 deadline.

20. Accordingly, pursuant to the plain language of Section 6.2, the Agreement terminated as of January 31, 2008.

21. On February 13, 2008, FaceTime's General Counsel, Jim Obrien, sent a letter to Reuters to memorialize the fact that the Agreement had expired on January 31, 2008. The February 13 letter further advised Reuters that under Section 8.4.2 of the Agreement, Reuters could continue using FaceTime's source code and other "Licensed Materials" (as defined in the Agreement) for a six-month "exit period" to facilitate an orderly transition of services for the end-users of the Reuters Messaging service. According to the parties' contract, however, Reuters must cease using FaceTime's source code and must return all Licensed Materials to FaceTime at the end of the six-month exit period – *i.e.*, by July 31, 2008.

22. On or about February 13, 2008, FaceTime's Vice President of Corporate Development, Deric Moilliet, spoke by telephone with Reuters' Global Head of Marketing and Strategy, Eran Barak, and Reuters' Senior Vice President of Strategic Alliances, Chris Lamb. Mr. Moilliet advised those individuals of the termination of the Agreement and extended to them an invitation to discuss terms for a new agreement for the license of FaceTime software.

23.     Reuters did not dispute that it failed to exercise its option by the January 31, 2008 deadline.  Instead, on February 19, 2008, Mr. Lamb sent an e-mail to FaceTime's accounts receivable department.  The e-mail stated in full: "Last Friday we wired $150,000 USD to Facetime as the final payment for our agreement with you with an effective date of 31 January 2006.  Please confirm that you have received and accepted these funds."

24.     After checking its records, FaceTime confirmed that it had received an unsolicited wire transfer from Reuters for $150,000.  However, the wire transfer was sent by Reuters on February 15, 2008 -- a full two weeks *after* Reuters' option to purchase a perpetual license from FaceTime had already expired, and *after* Reuters had been notified in writing (and verbally) of such expiration and termination.

25.     Thus, on February 20, 2008, FaceTime's Chief Financial Officer, Scott Case, sent a response e-mail to Mr. Lamb.  Mr. Case's e-mail reminded Mr. Lamb that the "agreement with Reuters terminated January 31, 2008.  Payment was required by that date to meet the terms of that expired agreement."  Mr. Case further stated in his e-mail that FaceTime was returning the $150,000 to Reuters, less $65,453.50 for certain payments that remained outstanding to FaceTime.  Accordingly, $84,546.50 was thereafter wired back to Reuters.

26.     On April 7, 2008, Reuters' Senior Vice President & Principal Legal Counsel, Intellectual Property, Carolyn Blankenship, sent a letter to FaceTime's General Counsel, Jim Obrien.  Ms. Blankenship's letter asserted, among other things, that Reuters' attempt at a late exercise of the option to purchase a perpetual license from FaceTime would somehow be upheld as valid under New York law.

27.     Ms. Blankenship and Mr. Obrien thereafter had a series of phone conversations regarding the parties' respective positions concerning the termination of the

Agreement. In those conversations Reuters has continued to take the position that it has legal right to retain its license to use FaceTime's source code and the Licensed Materials in perpetuity.

28. Accordingly, through this action, FaceTime seeks a declaratory judgment that Reuters did not properly exercise its option to purchase a perpetual license from FaceTime, that the parties' Agreement has expired according to its terms, and that Reuters therefore has no right to the continued use of the Licensed Materials.

### CLAIM FOR DECLARATORY JUDGMENT

29. FaceTime repeats the above allegations as if fully set forth herein.

30. The term of the parties' Agreement was for a period of two years, beginning on January 31, 2006 and ending on January 31, 2008.

31. Section 6.2 of the Agreement provided Reuters with an irrevocable option to purchase a perpetual, non-exclusive license for a one-time payment of $150,000. However, Section 6.2 provided that Reuters' option had to be exercised before January 31, 2008, *and* that Reuters also had to make a $150,000 payment to FaceTime before the January 31, 2008 deadline.

32. It is undisputed that Reuters did not exercise its option or make the $150,000 payment to FaceTime before the January 31, 2008 deadline.

33. Accordingly, pursuant to the plain language of Section 6.2, Reuters' option expired and the parties' Agreement terminated as of January 31, 2008.

34. As outlined above, Reuters insists that even though it did not timely exercise its option, its belated attempt to exercise its option should somehow be accepted. As such, an actual controversy of a justiciable nature presently exists between FaceTime and Reuters concerning whether the Agreement has expired, and the rights of the parties therein.

**WHEREFORE**, Plaintiff FaceTime seeks a declaratory judgment that:

*(1)* The parties' Agreement terminated as of January 31, 2008 according to the plain terms of Section 6.2 of the Agreement, due to Reuters' failure to exercise its option to purchase a perpetual license by the parties' bargained-for January 31, 2008 deadline;

*(2)* Reuters is permitted to continue using FaceTime's source code and other "Licensed Materials" (as defined in the Agreement) for a six-month period ending on July 31, 2008 to facilitate an orderly transition of services for the end-users of the Reuters Messaging service, but that as of July 31, 2008, Reuters must immediately cease using FaceTime's source code and all other "Licensed Materials" in any manner for any purpose, and must return all such materials to FaceTime; and

*(3)* FaceTime is entitled to such other relief as the Court deems just and equitable.

Respectfully submitted,

**LOWENSTEIN SANDLER** PC
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
973.597.2500
973.597.2400 (Fax)
shecht@lowenstein.com
*Attorneys for Plaintiff*
*FaceTime Communications, Inc.*

By: _____
Steven M. Hecht (SH-0414)
Jason Halper (JH-9957)

Dated: May 19, 2008