Steven M. Hecht (SH-0414)
Jason Halper (JH-9957)
**LOWENSTEIN SANDLER PC**
Attorneys at Law
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
*Attorneys for Plaintiff*
*FaceTime Communications, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FACETIME COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> REUTERS LIMITED, <br><br> Defendant. | DOCUMENT ELECTRONICALLY FILED <br><br> Civil Action No. 08-4730 (CM) <br><br> **DECLARATION OF JIM OBRIEN IN SUPPORT OF PLAINTIFF FACETIME'S MOTION FOR SUMMARY JUDGMENT** |

I, **JIM OBRIEN**, being of full age, hereby declare as follows:

1. I am an attorney-at-law in the State of California, and I am the General Counsel of Plaintiff FaceTime Communications, Inc. ("FaceTime"). I make this declaration to put forth certain facts and documents in support of FaceTime's motion for summary judgment. Except as indicated below, I have personal knowledge of the matters stated in this declaration.

2. FaceTime and Reuters entered into a Source Code Licensing Agreement, dated January 31, 2006 (the "Agreement"), in which FaceTime agreed to provide Reuters with a non-exclusive license to use certain FaceTime source code and other "Licensed Materials." The parties negotiated the Agreement over several months. A copy of the Agreement is attached as *Exhibit A* to the accompanying declaration of Kailash Ambwani, FaceTime's President and CEO.

3. The Agreement granted Reuters an option to purchase a perpetual license from FaceTime, but required Reuters to exercise its option and make a $150,000 payment to FaceTime before January 31, 2008. As set forth in the accompanying declarations of Scott Case (FaceTime's CFO) and Deric Moilliet (FaceTime's VP of Corporate Development), Reuters did not exercise its option to purchase a perpetual license from FaceTime by the January 31 deadline.

4. Accordingly, on February 13, 2008, I sent a letter to Reuters to memorialize the fact that the Agreement had expired on January 31, 2008. A copy of my February 13 letter is attached as *Exhibit A*.

5. The February 13 letter reminded Reuters that under Section 8.4.2 of the Agreement, Reuters could continue using FaceTime's source code and other "Licensed Materials" (as defined in the Agreement) for a six-month "exit period" to facilitate an orderly transition of services for the end-users of Reuters' instant messaging service.

6. Under Section 8.4.1 of the Agreement, however, Reuters must cease using FaceTime's source code and must return all "Licensed Materials" to FaceTime at the end of the six-month exit period -- *i.e.*, by July 31, 2008. The language of that section was drafted to reflect the intent that after July 31, 2008, Reuters would have no right to use the Licensed Materials in any manner and that any "Derivative Work" retained by Reuters after that date would be exclusive of the code licensed from FaceTime.

7. Under Section 11.1 of the Agreement the Licensed Materials are defined as "Confidential Information" and their use is limited to the performance of the Agreement. The restrictions on the use of Confidential Information in Section 11.3 of the Agreement contain no exception that would permit Reuters to use even the residual knowledge of any Confidential Information for any purpose other than performance of the Agreement. Neither the grant of

license terms nor the use of Confidential Information terms allow Reuters to use the Licensed Materials, or any residual knowledge thereof, to create software code after the termination or expiration of the Agreement.

8. As explained in the accompanying declaration of Scott Case (FaceTime's CFO), Reuters attempted to wire a $150,000 payment to FaceTime's accounts receivable department after Reuters received my February 13 letter.

9. FaceTime rejected Reuters' attempt to belatedly exercise its option.

10. Several weeks later, on April 7, I received a letter from Carolyn Blankenship (Reuters' Senior Vice President & Principal Legal Counsel, Intellectual Property). Ms. Blankenship's letter asserted, among other things, that Reuters' late attempt to exercise the option to purchase a perpetual license from FaceTime would be upheld as valid under New York law. A copy of Ms. Blankenship's April 7 letter is attached as *Exhibit B*.

11. I then had a series of phone conversations with Ms. Blankenship regarding the parties' respective positions concerning the termination of the Agreement. In those conversations, Reuters continued to take the position that it has a legal right to retain its license to use FaceTime's source code and the "Licensed Materials" in perpetuity.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

_____
Jim Obrien

Dated: June 16, 2008

**EXHIBIT A**



# FaceTime

February 13, 2008

Reuters Limited
c/o Reuters America LLC
The Reuters Building
Three Times Square
New York, New York 10036
Attn: Rania Barakat
Strategic Development & Marketing Manager

**Re:  Source Code Licensing Agreement**

Dear Rania:

The Source Code Licensing Agreement (the "Agreement"), dated January 31, 2006, between FaceTime Communications, Inc. and Reuters Limited, expired on January 31, 2008 and terminated as of that date. Pursuant to Section 8.4.2 of the Agreement, Reuters has the right to continue use of the materials licensed thereunder, along with any derivative works, for a limited period to facilitate an orderly transition of services for end users of the Reuters Messaging service. We would like to begin the return of the Licensed Materials (capitalized terms are as defined in the Agreement) that are not necessary to the transition of service.

It is our understanding that the following materials are not required during the transition period:

- The RMCM Customized Product
- The IMRelay product
- The RTMatrix product
- The IMA Software in connector mode to support Microsoft LCS

Deric Moilliet of FaceTime will be in contact with you to arrange a schedule for the return of the remaining Licensed Materials during the transition period. If you have any questions, please feel free to contact the undersigned at 650-631-6315, or Mr. Moilliet at 416-562-7060.

Sincerely,

Jim Obrien
General Counsel

cc.   General Counsel, Reuters America, LLC
      Deric Moilliet, FaceTime Communications, Inc.

1301 Shoreway Road, Suite 275
Belmont, CA 94002
650.631.6300 main
650.598.2820 fax
www.facetime.com

# EXHIBIT B



April 7, 2008

**By FedEx**

Jim O'Brien, Esq.
FaceTime Communications, Inc.
1301 Shoreway Road, Suite 125
Belmont, CA 94002

Re:    **Source Code Licensing Agreement**

Dear Mr. O'Brien:

I am the Principal Legal Counsel for Intellectual Property at Reuters. Your letter of February 13, 2008 has been referred to me for response. The Source Code Licensing Agreement dated January 31, 2006 (the "Agreement") gave Reuters the right to "use, copy, transform, modify, recast, adapt, decompile, amend, translate, revise, compile, enhance and create derivative works of both the Source Code and the Related Materials (together "Derivative Works") to provide compliance and security solutions in a hosted or deployed fashion for Reuters-branded (or Reuters co-branded) messaging and collaboration services, including the Reuters Messaging Service for use by End Users subject to the limitations herein." Pursuant to Section 2.7 of the Agreement, Reuters owns all intellectual property rights in the Derivative Works. Over the course of the Agreement, Reuters paid one million and three hundred thousand dollars to FaceTime for these and other rights under the Agreement.

The statement in your letter and in conversations with various members of our Company that Reuters must return or destroy any Derivative Works after the termination of the Agreement is erroneous and contradicted by the express language of Sections 2.6 and 2.7 of the Agreement.

In February 2008, Reuters sent a wire transfer in the amount of $150,000 in connection with the exercise of its option under Clause 6.2 of the Agreement. It is my understanding that your company retained a portion of the remitted funds and returned some of the monies to Reuters. Under New York law, Courts routinely grant equitable relief to prevent forfeiture of vested rights in the event of an untimely exercise of an option. See *Record Club of America, Inc. v. United Artists Records, Inc.*, 890 F. 2d 1264 (2d Cir. 1989). Therefore, to the extent that a license is required for Reuters to operate the deployed companion solution as part of the Reuters Messaging service, we believe that equitable relief would be granted by the New York Courts. We remain ready to re-transfer the balance the funds that were returned to us, together with interest from January 31, 2008 to the date of the transfer.

The Reuters Building  3 Times Square  New York  NY 10036  United States  T +1 646 223 4000  reuters.com

**REUTERS**

April 7, 2008
Jim O'Brien, Esq.
Page 2

If you have any questions, please contact me directly on 646-223-4205.

Sincerely,

Carolyn Blankenship
Senior Vice President & PLC, Intellectual Property