UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FACETIME COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> - against- <br><br> REUTERS LIMITED, <br><br> Defendant. | ECF FILED <br><br><br> No. 08 Civ. 4730 (CM)(KNF) |

## DECLARATION OF MARK HADLEY

I, MARK HADLEY, hereby declare:

1. I am Vice President, Head of Finance, Marketing and Commercial Policy at Thomson Reuters.[1] I have more than 17 years of experience working in the finance and accounting field. Except as indicated below, I have personal knowledge of the matters stated in this declaration.

### The Source Code Agreement

2. In or about late 2005 and early 2006, Reuters and FaceTime were negotiating an agreement pertaining to Reuters' use of FaceTime source code in order to build a hosted compliance solution for Reuters Messaging.

3. During this time, I served as Head of Finance for Enterprise at Reuters.

---

[1] Thomson Reuters was created by The Thomson Corporation's purchase of Reuters PLC on April 17, 2008. The license agreement at the heart of this dispute was entered into with Reuters approximately two years prior to the reorganization. For the sake of simplicity, I will use the term "Reuters" throughout.

4. My responsibilities included, among other things, providing advice and making determinations (with help from my colleagues in the Group Finance department) on the accounting treatment of transactions undertaken by the Enterprise division.

5. In making such accounting determinations, I was guided by conversations with the business people surrounding the intent of the parties as to the nature of the transaction, as well as by the terms of the respective agreements.

6. In connection with the proposed agreement with FaceTime, I was asked to opine in early 2006 on the advisability and potential accounting ramifications of the transaction.

7. In order to make a determination on the advisability of entering such an agreement from an accounting perspective, as well as on the accounting treatment that would be accorded to the proposed payment structure, I reviewed the business terms of the proposed deal, and I spoke to various members of the Enterprise business team and consulted with the Group Finance department.[2]

8. Included among my discussions with the Enterprise business team was a conversation with Eran Barak in which I inquired as to whether Reuters intended to exercise the option at the end of this agreement. Eran answered that there was no doubt Reuters intended to exercise the option.

9. Based on my review of the proposed agreement, as well as on my conversations with members of the Enterprise business team, I concluded that this agreement had the nature of a "finance lease" under which Reuters would be acquiring an intangible asset as opposed to an

---

[2] In FaceTime's first draft of the term sheet after the general payment structure was agreed to, the specific payment terms were as follows: eight quarterly payments of $250,000 each over the course of two years, along with a final perpetual license payment in the amount of $50,000. The payment terms that were finally agreed to were substantially similar, with the only differences being that there were seven license payments, with six in the amount of $200,000 and one in the amount of $100,000, and the final payment was in the amount of $150,000.

"operating lease" under which Reuters would merely be renting a product for a short period of time.

10. For accounting purposes the distinction between a finance lease and an operating lease is critical because it determines whether the transaction can be capitalized. If an asset is being purchased under a finance lease, the costs are not expensed in the year in which they are paid, but rather, they are amortized over the life of the asset. Costs incurred pursuant to an operating lease in contrast, must be expensed, and will simply appear on the financial statement as a cost incurred at that particular time.

11. An operating lease is akin to a short-term rental (such as a two-year lease of a car). A finance lease on the other hand is more akin to the actual purchase of an asset. Typical characteristics of a finance lease include: a balloon payment at the end of the term that is small in comparison to the payments made over the life of the agreement; and an intention on behalf of the parties to transfer control of the asset to the purchaser.

12. In connection with the FaceTime agreement, I determined based on the multitude of factors, including the relatively minimal payment at the end of the two years and the clear intent on the part of Reuters to exercise this option, that the agreement was properly characterized as a finance lease and the payments thereunder could therefore be capitalized.

13. Accordingly, after the Agreement was executed, the acquisition of the FaceTime source code license was recorded in Reuters' books as an intangible asset that was capitalized and is being amortized over a three-year period.

14. I declare under penalty of perjury that the foregoing is true and correct. I executed this declaration in New York, New York on June 30, 2008.

_____
Mark Hadley