UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FACETIME COMMUNICATIONS, INC.,

                Plaintiff,

    - against-

REUTERS LIMITED,

                Defendant.

**ECF FILED**

No. 08 Civ. 4730 (CM)(KNF)

## DEFENDANT'S RULE 56.1(b) STATEMENT

Defendant Reuters Limited ("Reuters"), through its attorneys Satterlee Stephens Burke & Burke LLP, submits this statement, pursuant to Local Rule 56.1(b), in response to the statement of FaceTime Communications, Inc. ("FaceTime"), pursuant to Local Rule 56.1(a), in support of its motion for summary judgment (the "56.1(a) Statement").

    1.    Reuters does not dispute the facts stated in Paragraph 1 of the 56.1(a) Statement.

    2.    The statement in Paragraph 2 of the 56.1(a) Statement is an assertion about the legal effect of the Source Code Licensing Agreement (the "Agreement"), and as such is not a "fact" which requires a response. The Court is respectfully referred to the entire Agreement for its terms.

    3.    The statement in Paragraph 3 of the 56.1(a) Statement is an assertion about the legal effect of the Agreement, and as such is not a "fact" which requires a response. The Court is respectfully referred to the entire Agreement for its terms.

    4.    The statement in Paragraph 4 of the 56.1(a) Statement is an assertion about the legal effect of the Agreement, and as such is not a "fact" which requires a response. The Court is respectfully referred to the entire Agreement for its terms.

5. The statement in Paragraph 5 of the 56.1(a) Statement is an assertion about the legal effect of the Agreement, and as such is not a "fact" which requires a response. The Court is respectfully referred to the entire Agreement for its terms.

6. The statement in Paragraph 6 of the 56.1(a) Statement is an assertion about the legal effect of the Agreement, and as such is not a "fact" which requires a response. Reuters does not dispute that the quoted language is found in § 6.2 of the Agreement, though such language does not constitute the entirety of § 6.2. The Court is respectfully referred to the entire Agreement for its terms.

7. Reuters does not dispute that it did not make a $150,000 payment on or before January 31, 2008, but states that the remainder of Paragraph 7 of the 56.1(a) Statement, in particular whether Reuters thereby "did not exercise its option" or whether the January 31, 2008 date is appropriately characterized as a "deadline," are assertions regarding the legal effect of the Agreement and, as such , not "facts" which require a response. The Court is respectfully referred to the entire Agreement for its terms.

8. Reuters does not dispute that Jim O'Brien wrote a letter to Reuters dated February 13, 2008 but otherwise disputes that the statement in Paragraph 8 of the 56.1(a) Statement is a complete or accurate representation of the communication and respectfully refers the Court to the letter for its full content.

9. Reuters disputes that the statement in Paragraph 9 of the 56.1(a) Statement is a complete or accurate representation of the communication and respectfully refers the Court to the letter for its full content.

10. Reuters does not dispute the facts stated in Paragraph 10 of the 56.1(a) Statement.

11. Reuters does not dispute the facts stated in Paragraph 11 of the 56.1(a) Statement.

739554_1

12. Reuters does not dispute that Scott Case sent an email to Christopher Lamb on February 20, 2008, nor does it dispute that FaceTime sent a wire transfer of $84,546.50 to Reuters, but Reuters otherwise disputes that the facts stated in Paragraph 12 of the 56.1(a) Statement are a complete representation of the communications between the parties and refers the Court to the emails for their full text.

13. Reuters does not dispute the facts stated in Paragraph 13 of the 56.1(a) Statement, although it disputes that such facts are a complete or accurate representation of Reuters' position and respectfully refers the Court to Reuters' opposition papers for a full statement of Reuters' arguments.

## STATEMENT OF ADDITIONAL FACTS

Reuters submits the following statement of additional material facts as to which there exists at least a genuine issue to be tried. (The inclusion of facts in this statement is not intended by Reuters to imply that evidence necessarily exists to controvert those facts.)

14. Reuters' failure to make a payment of $150,000 on or before January 31, 2008 was due to oversight rather than any intentional delay. (Declaration of Christopher Lamb ("Lamb Decl.") ¶¶ 2-13.)

15. While FaceTime had invoiced Reuters for prior payments due under the Agreement, FaceTime did not send Reuters an invoice for the $150,000 final payment due January 31, 2008. (Lamb Decl. ¶¶ 4, 9, 12.)

16. FaceTime's invoices to Reuters had, over the course of the Agreement, sometimes contained confusing or incorrect information regarding the due date of payments. (Lamb Decl. ¶ 9.)

17. On at least three occasions, FaceTime accepted late payments from Reuters under the Agreement and never threatened to terminate the Agreement because of such delay. (Lamb Decl. ¶¶ 9-10.)

18. Upon being notified that payment of the $150,000 had not been made by January 31, 2008, Reuters immediately took steps to wire the money to FaceTime. (Lamb Decl. ¶¶ 11-13.)

19. Reuters indicated to FaceTime that the $150,000 wired on February 15, 2008 was for the final payment due under the Agreement. (Lamb Decl. ¶ 14.)

20. After more than a week from receipt of the payment, FaceTime kept all but $84,546.50 of the $150,000 wire transfer and asserted that the amount retained was for amounts past due rather than the final payment under the Agreement. (Lamb Decl. ¶¶ 13-17.)

21. Reuters has disputed to FaceTime the validity of the alleged obligations for which FaceTime purported to retain a portion of the $150,000 payment. (Declaration of Ann Demirtjis ("Demirtjis Decl.") ¶¶ 9-11.)

22. Reuters always intended to obtain a perpetual license to the FaceTime software, and communicated that fact to FaceTime. (Declaration of Eran Barak ("Barak Decl.") ¶¶ 8-17.)

23. Because of the expectation that Reuters would obtain a perpetual license, Reuters' accounting personnel treated the Agreement as a "finance lease" and capitalized the acquisition of the FaceTime license. (Declaration of Mark Hadley ("Hadley Decl.") ¶¶ 2-13.)

24. There was no discussion during negotiation of the Agreement that FaceTime considered strict compliance with the timing of the lease payments, including the final payment, to be a critical part of the bargain. (Barak Decl. ¶ 18.)

739554_1

25. Reuters has made payments of $1.3 million in license fees under the Agreement, plus the final $150,000 payment made on February 15, 2008. (Barak Decl. ¶ 19.)

26. Due to the need to comply with various federal, state and local laws, financial clients of Reuters Messaging require that their instant messaging product have the ability to log and record messages. (Barak Decl. ¶ 3.)

27. The FaceTime software licensed by Reuters is used to provide compliance with these legal recording requirements. (Barak Decl. ¶¶ 4-9.)

28. In order to create the "Hosted Solution," i.e., a version of Reuters Messaging that was hosted on Reuters' own servers rather than deployed to each customer's site, Reuters had to undertake multiple and substantial modifications to the FaceTime software, creating what are called in the Agreement the "Derivative Works." (Demirtjis Decl. ¶¶ 3-8.)

29. Reuters has invested at least $2 million in order to modify and enhance the FaceTime source code for the "Hosted Solution" of Reuters Messaging. (Barak Decl. ¶ 20.)

30. The compliance aspects of Reuters Messaging are a critical resource for at least 100 of Reuters' customers who use the Reuters Messaging service. (Barak Decl. ¶ 21.)

31. If Reuters were suddenly to be required to cease using the Derivative Works, there would be a severe disruption to the Reuters Messaging Service and to the customers that depend upon it. (Barak Decl. ¶¶ 23-24.)

32. Such disruption would result in substantial loss of customer goodwill and the likely loss of sales of other, non-messaging products to those customers, due to customers' needs to find alternative messaging services, as well significant loss of revenue to Reuters. (Barak Decl. ¶ 24.)

33. There is no practical, immediately available substitute for the compliance product of Reuters Messaging. Any alternative would take a considerable amount of time to develop, implement, and transition customers to, as well as result in considerable cost to Reuters. (Barak Decl. ¶ 25.)

Dated: New York, New York
July 1, 2008

                                                  Respectfully submitted,

                                                  SATTERLEE STEPHENS BURKE & BURKE LLP


                                                  By:      /s/ James F. Rittinger
                                                        James F. Rittinger (JR-0556)
                                                        Justin E. Klein (JK-8865)
                                                        Glenn C. Edwards (GE-0696)
                                                230 Park Avenue
                                                New York, NY 10169
                                                (212) 818-9200
                                                Attorneys for Defendant Reuters Limited