Steven M. Hecht (SH-0414)
Jason Halper (JH-9957)
**LOWENSTEIN SANDLER PC**
Attorneys at Law
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
*Attorneys for Plaintiff*
*FaceTime Communications, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FACETIME COMMUNICATIONS, INC., | **DOCUMENT ELECTRONICALLY FILED** |
| Plaintiff, | Civil Action No.  08-4730 (CM) |
| v. | |
| REUTERS LIMITED, | |
| Defendant. | |

**PLAINTIFF FACETIME'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION
TO DEFENDANT REUTERS' CROSS-MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT

    I.      THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS MATTER, AND THE DECLARATORY RELIEF SOUGHT BY FACETIME IS PLAINLY NECESSARY TO RESOLVE THE PARTIES' DISPUTE. .......................................................................................... 3

    II.     IT IS UNDISPUTED THAT REUTERS FAILED TO EXERCISE ITS OPTION TO PURCHASE A PERPETUAL LICENSE BY THE JANUARY 31, 2008 DEADLINE.  THE OPTION HAS THEREFORE EXPIRED AS A MATTER OF LAW ........................................... 6

        A.     There Is No Equitable Basis To Excuse Reuters' Failure To Exercise Its Option In Accordance With The Explicit And Clear Terms Of The Contract. ................................................... 6

             The "Two-Week" Delay ........................................................ 6

             The Materiality of the January 31 Deadline ............................ 7

             Reuters' Alleged "Forfeiture" ............................................... 8

        B.     FaceTime Did Not Waive The January 31, 2008 Deadline. ..................... 10

    III.    REUTERS MUST CEASE USING FACETIME'S SOURCE CODE AND ALL OTHER "LICENSED MATERIALS" AS OF JULY 31, 2008................... 12

    IV.    REUTERS CANNOT CLAIM INADEQUATE DISCOVERY IN THIS MATTER BECAUSE IT FAILED TO SUBMIT A RULE 56(f) AFFIDAVIT. ........................................................................... 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Pages**

CASES

*Boal v. Smith*, 35 A.D.2d 730, 315 N.Y.S.2d 264 (2d Dep't 1970) ............................... 7

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556 (S.D.N.Y. 2003) ................. 8

*Capitol Records, Inc. v. Naxos of America, Inc.*, 372 F.3d 471 (2d Cir. 2004) ........................... 11

*Citicorp Leasing, Inc. v. Kusher Family Ltd. Partnership*,
2006 WL 1982757 (S.D.N.Y. July 14, 2006) ...................... 14

*Dow Jones & Company, Inc. v. Harrods Limited*, 346 F.3d 357 (2d Cir. 2003) .......................... 4

*Dun & Bradstreet Corp. v. HarperCollins Publishers, Inc.*,
872 F. Supp. 103 (S.D.N.Y. 1995) .................................. 12

*Gilliam v. American Broadcasting Cos.*, 538 F.2d 14 (2d Cir. 1976) ........................................ 14

*Guardian Music Corp. v. James W. Guerico Enters., Inc.*,
459 F. Supp. 2d 216 (S.D.N.Y. 2006) ................................ 8

*Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*,
2007 WL 163111 (S.D.N.Y. Jan. 22, 2007) ...................... 5

*Kenyon & Kenyon v. Logany LLC*, 33 A.D.3d 538, 823 N.Y.S.2d 72 (1st Dep't 2006) ............. 12

*Madison Avenue Leasehold, LLC v. Madison Bentley Associates LLC*,
30 A.D.3d 1, 811 N.Y.S.2d 47 (1st Dep't 2006) ................... 11

*Manhattan Gear and Instrument Co. v. 2350 Linden Blvd. Corp.*,
27 A.D.2d 570 (2d Dep't 1966) ..................................... 7

*Marino v. Marino*, 140 A.D.2d 499, 528 N.Y.S.2d 402 (2d Dep't 1988) .................................. 7

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
86 N.Y.2d 685, 636 N.Y.S.2d 734 (1995) .......................... 10

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) ......................................... 14-15

*Pramco III, LLC v. Partners Trust Bank*,
16 Misc.3d 351, 842 N.Y.S.2d 174 (Sup. Ct. Monroe County 2007) ................... 10

*Record Club of America v. United Artists Records, Inc.*,
890 F.2d 1264 (2d Cir. 1989) ..................................... 8-9

*Stewart v. Abend*, 495 U.S. 207, 110 S. Ct. 1750 (1990) ............................................. 14

*United States v. Abady*, 2004 WL 444081 (S.D.N.Y. March 11, 2004) .................................... 10

*USA Network v. Jones Intercable Inc.*, 729 F. Supp. 304 (S.D.N.Y. 1990) ............................... 10

FEDERAL RULES OF CIVIL PROCEDURE

*FED. R. CIV. P.* 56(f) ............................................................................. 14

MISCELLANEOUS

1 *Nimmer on Copyright* § 3.07 ..................................................................... 14

Plaintiff FaceTime Communications, Inc. ("FaceTime") respectfully submits this reply brief in further support of its motion for summary judgment, and in opposition to Defendant Reuters' cross-motion to dismiss the complaint or for judgment on the pleadings.

## INTRODUCTION

Through its opposition papers, Reuters is attempting to gain contractual rights that simply do not exist.  Reuters argues that it should have a perpetual license to continue using FaceTime's proprietary source code, even though Reuters admits that it failed to exercise its option to purchase such a perpetual license by the January 31, 2008 deadline in the parties' contract.  Reuters argues that FaceTime waived that deadline, even though the contract has a "no waiver" provision.  Reuters also argues that it contemplated entering into a perpetual license all along, and that the $150,000 option payment due on January 31 was merely the final payment due to FaceTime.  But that's not what the contract says.  Indeed, if Reuters had really been granted a perpetual license from the start, why did the parties' contract specify a two-year term, and include an option provision with a firm deadline?  Reuters has no answer for those questions.

The most telling aspect of Reuters' 25-page opposition brief is that it does not cite a single sentence from the actual contract.  Instead, Reuters seeks to rely on several "facts" outside of the contract, including a pre-contract term sheet, a statement that one of its employees evidently never read the option provision in the contract, and the internal accounting decisions of Reuters' finance group regarding the contract payments.  None of this has any relevance to the issues before the Court.  Rather, this dispute is governed by the clear and unambiguous language of the contract, which was negotiated and agreed upon by two sophisticated commercial parties.  Reuters simply cannot change the fact that it failed to exercise its option to purchase a perpetual license from FaceTime by the January 31 deadline.  Its license has therefore expired.

1

It is also telling that Reuters' lead argument is to urge this Court not to decide this dispute. According to Reuters, the Court should use its discretion under the Declaratory Judgment Act and dismiss this action because the declaratory relief sought by FaceTime will supposedly not resolve the parties' underlying dispute. Not so. FaceTime seeks a declaratory judgment that *(1)* the parties' contract terminated due to Reuters' failure to exercise its option by the January 31 deadline, and *(2)* in accordance with the contract's six-month "exit period," Reuters must cease using FaceTime's source code and all other "Licensed Materials" (as defined in the contract) in any manner, and for any purpose, by July 31, 2008. The declaratory relief being sought by FaceTime will therefore clarify or settle all of the legal issues at stake.

Reuters states that even if its license has expired, it is unclear whether it can continue using the "Derivative Works" it has developed for its instant messaging service -- *i.e.*, the software that Reuters has developed based on FaceTime's proprietary source code, but which contains additional code and other enhancements that Reuters has written into the program. This wishful thinking by Reuters does not raise a factual question. The parties' contract makes clear that Reuters is entitled to maintain ownership over the intellectual property in any modifications or enhancements to its own software that it created during the license term (the "Derivative Works") -- but once the parties' license is terminated, Reuters no longer has any right to use or sell any software that contains FaceTime's underlying source code. Indeed, that was the whole point of including an option for Reuters to purchase a perpetual license in the contract. If Reuters could continue using FaceTime's underlying source code in perpetuity under the guise of "Derivative Works," the perpetual license option, and the provisions in the contract dealing with termination, including the six-month "exit period," would be completely superfluous.

In short, there is no dispute that Reuters failed to exercise its option to purchase a perpetual license by the January 31 deadline. Reuters had a six-month "exit period," until July 31, to either transition to a new compliance solution vendor or enter into a new agreement with FaceTime. Reuters did neither, and is now claiming that the termination of the contract would be unfair. But equity does not allow a party, particularly a sophisticated party like Reuters, to ignore the plain language of a negotiated contract. The harm Reuters claims would result from a declaratory judgment is, at most, the consequence of its failure to mitigate the effect of the expiration of a license. Instead of pursuing a business solution to this business issue, Reuters has instead sought to effectively extend its beneficial use of the expired license by refusing to abide by the terms of the parties' contract. The contract here is clear and unambiguous, and there are no material facts in dispute. Summary judgment is therefore warranted.

## <u>ARGUMENT</u>

### I.    **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS MATTER, AND THE DECLARATORY RELIEF SOUGHT BY FACETIME IS <u>PLAINLY NECESSARY TO RESOLVE THE PARTIES' DISPUTE.</u>**

Section 12.6 of the parties' Source Code Licensing Agreement calls for all disputes between the parties to be heard in either the federal or state courts of New York. *Ambwani Decl.*, Ex. A. In its Answer, Reuters does not dispute that federal diversity jurisdiction exists in this case; it does not dispute that venue is proper in this Court; and it does not dispute that this Court has personal jurisdiction over Reuters. *Answer* ¶¶ 6-8 (PACER No. 8). Yet Reuters has nevertheless cross-moved to dismiss the complaint or, alternatively, for judgment on the pleadings, on the ground that the Court should decline to assert jurisdiction over this declaratory judgment action. *Def. Br.* at 7-10. According to Reuters, the declaratory relief sought by FaceTime will not "finalize the controversy" between the parties, and "is nothing more than a tactical salvo in what even [FaceTime] admits is a much broader war." *Id.* at 8.

3

However, Reuters concedes that there is an actual and ongoing dispute between the parties regarding whether the Source Code Licensing Agreement has been terminated, and whether Reuters has a perpetual license to continue using FaceTime's proprietary source code. It is therefore puzzling why Reuters believes that this action "will do very little, if anything, to address the real controversy between the parties." *Id.* Indeed, it appears that Reuters is the one firing a "tactical salvo." By urging this Court to dismiss this action and not decide any of the issues in dispute, Reuters is evidently hoping to drag this dispute out as long as possible -- and thereby extend its use of FaceTime's source code well beyond the term of the Agreement. Moreover, it is telling that while Reuters urges this Court to decline jurisdiction over this matter, it never explains how or where the parties' dispute should otherwise be resolved -- other than its remarkable statement that the *only* way to "bring an end to the parties' dispute" is for the Court to find that "Reuters' exercise of the Perpetual License Option was effective . . . ." *Id.*

The main case cited by Reuters, *Dow Jones & Company, Inc. v. Harrods Limited*, 346 F.3d 357 (2d Cir. 2003), is entirely distinguishable from this case. In *Dow Jones*, dueling lawsuits were filed regarding a *Wall Street Journal* article that criticized the disclosure practices of a London-based retailer. Dow Jones sought a declaration in the Southern District of New York that the article was not defamatory, and the defendant retailer countered by filing suit in the United Kingdom for damages and sought an injunction to have the article removed from *Wall Street Journal's* website. Judge Marrero dismissed the Southern District action on several grounds, including that the action was "not ripe for adjudication," and "principles of international comity would be violated." *Id.* at 359. Here, by contrast, no other action is pending between the parties -- much less a suit pending in a foreign country. Nor could there be, given that the Agreement mandates that all disputes be adjudicated in New York.

Reuters also argues that the declaratory relief sought by FaceTime will result in "piecemeal resolution" of this dispute. *Def. Br.* at 9. According to Reuters, the declaratory relief being sought by FaceTime will not resolve the question of whether Reuters can continue using the "Derivative Works" it has created for its Reuters Messaging software. That's incorrect. As explained below in Point III, the Agreement makes clear that Reuters is entitled to maintain ownership over its "Derivative Works" -- but once the parties' Agreement is terminated, Reuters no longer has any right to use or sell any software that contains FaceTime's underlying source code. *Ambwani Decl.*, Ex. A (§§ 2.3, 2.7, 6.2, 8.4.1 and 8.4.2). Therefore, as is clearly spelled out in FaceTime's moving papers, FaceTime is seeking not only a declaratory judgment that the Agreement has terminated due to Reuters' failure to exercise its option to purchase a perpetual license by the January 31, 2008 deadline, but also a declaration that Reuters must cease using FaceTime's underlying source code and all other "Licensed Materials" (as defined in the Agreement) in any manner at the end of the six-month "exit period" -- *i.e.*, by July 31, 2008. *See* Point II of *FaceTime's Mov. Br.* (at 14); *see also FaceTime's Proposed Order*.

Accordingly, the Court's decision in this declaratory judgment action will clarify or settle all of the legal issues at stake, and will remove the uncertainty surrounding the parties' rights and obligations under the Agreement. Reuters' cross-motion to dismiss the complaint or for judgment on the pleadings should therefore be denied. *See Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, 2007 WL 163111, *4-5 (S.D.N.Y. Jan. 22, 2007) (Swain, J.) (denying motion to dismiss and agreeing to adjudicate declaratory judgment action where actual dispute existed, the case was not brought merely for "procedural fencing," and a declaratory judgment would not increase friction between sovereign legal systems).

## II. IT IS UNDISPUTED THAT REUTERS FAILED TO EXERCISE ITS OPTION TO PURCHASE A PERPETUAL LICENSE BY THE JANUARY 31, 2008 DEADLINE. THE OPTION HAS THEREFORE EXPIRED AS A MATTER OF LAW.

### A. There Is No Equitable Basis To Excuse Reuters' Failure To Exercise Its Option In Accordance With The Explicit And Clear Terms Of The Contract.

Reuters argues that its failure to exercise its option to purchase a perpetual license from FaceTime in accordance with the plain terms of the Agreement should somehow be excused on equitable grounds because *(1)* Reuters' failure to exercise the option was inadvertent and it attempted to exercise the option only two weeks after the January 31 deadline passed (*Def. Br. a*t 11-12; 17-19), *(2)* the January 31 deadline was supposedly not a material part of the parties' Agreement (*Id.* at 19-20), and *(3)* Reuters will purportedly suffer a "forfeiture" if its license is terminated (*Id.* at 12-16; 21-23). All of those arguments fail as a matter of law.

**The "Two-Week" Delay**. Reuters argues that it missed the January 31 deadline by only two weeks. But Reuters conveniently ignores the fact that it did not attempt to exercise its option to purchase a perpetual license until *FaceTime* informed Reuters that the deadline had passed. On February 13, FaceTime's General Counsel, Jim Obrien, informed Reuters in writing that the Agreement had terminated according to its terms. *Obrien Decl.*, Ex. A. Mr. Obrien's letter also reminded Reuters that the Agreement provided a generous a six-month "exit period" for Reuters to transition to a new compliance solution vendor for its Reuters Messaging service. Around that same time, FaceTime also verbally advised Reuters that the parties' Agreement had terminated due to Reuters' failure to exercise its option. *Moilliet Decl.* ¶¶ 2-3. It was only days later, on February 15, that Reuters first attempted to belatedly exercise its option. *Def. Br.* at 6-7.

FaceTime acted in a commercially reasonable manner, and had no obligation to provide Reuters with reminders about the Agreement's terms. The fact that FaceTime was trying to make the transition for Reuters smoother should not be used against FaceTime to excuse

Reuters' failure to strictly comply with the option deadline.  As such, there is no merit to Reuters' argument that its failure to timely exercise its option was "de minimis."  And in any event, there is no such thing as a "de minimis" failure to timely exercise an option under New York law -- once the option deadline passes, the option automatically expires according to its terms.  *See Marino v. Marino*, 140 A.D.2d 499, 528 N.Y.S.2d 402 (2d Dep't 1988) (holding that plaintiff forfeited her rights in an option to purchase a real estate interest, even though she served notice of her intent to purchase *four days late*); *Boal v. Smith*, 35 A.D.2d 730, 315 N.Y.S.2d 264 (2d Dep't 1970) (option to purchase expired even though plaintiff's notice was only *eight days late*); *Manhattan Gear and Instrument Co. v. 2350 Linden Blvd. Corp.*, 27 A.D.2d 570 (2d Dep't 1966) (after option expired, "there was no offer in existence which could be accepted by plaintiff.").

      **The Materiality of the January 31 Deadline.**  Reuters next argues that "there is no reason to believe that making of the final payment of $150,000 on January 31, 2008 as opposed to February 15, 2008 was a 'material part of the agreed exchange.'"  *Def. Br.* at 20.  This argument simply ignores the plain language of the Agreement.  Section 6.2 of the Agreement states quite clearly that Reuters' option to purchase a perpetual license from FaceTime had to be exercised by, and a $150,000 purchase price had to be paid by, January 31, 2008.  *Ambwani Decl.*, Ex. A § 6.2.  But Section 6.2 goes even further, and states that:

> In the event that Reuters elects not [to] exercise its Perpetual License Option *or fails to make payment of the Perpetual License Fee when due*, Reuters license to use the Licensed Materials shall terminate on such date . . .

*Id.*  The parties therefore made clear that January 31 was a firm deadline.  To hold otherwise would make the sentence quoted above -- as well as the six-month "exit period" upon the termination of the Agreement under Section 8.4.2 -- completely meaningless.  Thus, under the

7

plain language of the parties' negotiated Agreement, the option to purchase a perpetual license had to be exercised by a date certain -- and not on some *post hoc* date of Reuters' choosing.

In an attempt to tiptoe around the plain language, Reuters relies heavily on several "facts" outside of the Agreement -- including a pre-contract term sheet (*Barak Decl.*, Exs. A and B), a statement that one of its employees evidently never read the option provision in Section 6.2 (*Lamb Decl.* ¶ 3), and the internal accounting decisions of Reuters' finance group regarding the license payments (*Hadley Decl.* ¶¶ 9-13). Reuters also claims that its intent was always to ultimately exercise its option to purchase a perpetual license from FaceTime. *Barak Decl.* ¶¶ 13-18. None of this extrinsic evidence is relevant or admissible in this case, given that the option provision, Section 6.2, is clear on its face. Where the "contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) (citation omitted). Here, of course, Reuters has not even attempted to argue that the language in Section 6.2 is unclear or ambiguous in any manner. Summary judgment should therefore be granted based on the plain meaning of the contract. *Guardian Music Corp. v. James W. Guerico Enters., Inc.*, 459 F. Supp. 2d 216, 222 (S.D.N.Y. 2006).

**Reuters' Alleged "Forfeiture."** Reuters admits that under New York law, equity can excuse a late exercise of an option only "to avoid a disproportionate forfeiture." *Def. Br.* at 12. As explained in FaceTime's moving brief, such a forfeiture has generally only been found to exist in the landlord-tenant context, and thus the Second Circuit has declared that "[w]e seriously doubt that the New York courts would deem the loss of a relationship with a licensor or vendor a forfeiture." *Record Club of America v. United Artists Records, Inc.*, 890 F.2d 1264, 1274 (2d Cir. 1989). The Second Circuit in *Record Club* explained that:

> The greater possibility of forfeiture in the context of real estate rights results principally from the fact that if the tenant has installed permanent fixtures in the property, they cannot, of course, be taken with him when he leaves. If those fixtures have value, the court may find that the inadvertent failure to have timely exercised the contractual option will work a forfeiture. Even in the landlord-tenant context, however, a forfeiture is not found lightly.

*Id.* at 1273.

Here, of course, Reuters is not leaving behind anything akin to a permanent fixture. In fact, Reuters is not leaving anything behind at all. Under Sections 2.7 and 6.2 of the Agreement, Reuters is entitled to maintain ownership over the intellectual property in its "Derivative Works" -- *i.e.*, the modifications or enhancements it made to its software that it created during the license term. Once the parties' license is terminated, Reuters simply no longer has the right to use or sell any software that contains FaceTime's underlying source code. *Ambwani Decl.*, Ex. A §§ 6.2 and 8.4.1. That fact that Reuters is not permitted to use FaceTime's source code in perpetuity is not a forfeiture under the law. Unlike the long-term tenant who is forced to move out of the premises and leave behind all of his improvements, Reuters had only a two-year license and is not leaving anything behind. Reuters is not being forced to shut down its instant messaging network, or even give up any customers. Rather, as Reuters itself admits in its opposition papers, it simply has to enter into a licensing arrangement with a new vendor. *Def. Br.* at 5; *Barak Decl.* ¶ 25. Reuters' position is therefore similar to a restaurant that loses its license to sell alcohol. The restaurant still operates at the same location, has the same customers, the same food, but now is serving lemonade instead of chardonnay.

Reuters has it within its power, and has always had it within its power, to avoid or resolve the harm it claims from its current situation. The Agreement granted Reuters the option to purchase a perpetual license from FaceTime. Reuters had two full years to exercise that right, but neglected to do so. Once the option expired, Reuters chose not to enter into a new license

agreement with FaceTime. Reuters also had six full months to transition to a new compliance vendor, but it again neglected to do so. Reuters now asks the Court to essentially re-write the parties' Agreement, and grant Reuters a perpetual license to use FaceTime's source code under the guise of equity. To do so would make a mockery of the January 31 option deadline in Section 6.2 of the Agreement, and the six-month "exit period" in Section 8.4.2.

Finally, Reuters cites several cases to support the inaccurate proposition that, under New York law, "equity will excuse the nonoccurrence of conditions precedent (including the failure to timely exercise an option) . . . in situations other than where a lessee has failed to exercise its renewal or purchase option." *Def. Br.* 15. None of these cases, however, excused the untimely exercise of an *option*. *See United States v. Abady*, 2004 WL 444081 (S.D.N.Y. March 11, 2004) (excusing failure to send notices and reset loan status, not failure to timely exercise option); *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691-92, 636 N.Y.S.2d 734, 738 (1995) (discussing possibility of excusing failure to deliver written notice of consent); *Pramco III, LLC. v. Partners Trust Bank*, 16 Misc.3d 351, 842 N.Y.S.2d 174, 185 (Sup. Ct. Monroe County 2007) (excusing failure to update files).

In the one case cited by Reuters that actually involved the untimely exercise of an option, the court *refused* to excuse that untimely exercise based on equitable principles. *See USA Network v. Jones Intercable Inc.*, 729 F. Supp. 304, 310-11 (S.D.N.Y. 1990). The authority on which Reuters relies, therefore, confirms -- not contradicts -- the Second Circuit's pronouncement in *Record Club* that New York courts will not excuse a party's failure to timely exercise an option outside of the landlord-tenant context.

**B.     FaceTime Did Not Waive The January 31, 2008 Deadline.**

Reuters next argues that FaceTime waived the January 31 option deadline through a "course of conduct." *Def. Br.* at 23-24. But there was no course of conduct at all with regard

to the purchase option, which is set out in its own section of the Agreement (Section 6.2), and is treated differently in all regards from all the other payments under the contract. *Compare* Section 6.1 (listing the payments due for the two-year license) to Section 6.2 (option provision).

Under New York law, a claim of waiver requires proof of an "intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Capitol Records, Inc. v. Naxos of America, Inc.*, 372 F.3d 471, 482 (2d Cir. 2004) (citation omitted). Here, FaceTime never intentionally relinquished its right to require Reuters to strictly comply with the terms of the perpetual license option. Quite to the contrary, when Reuters failed to exercise its option by the January 31 deadline, FaceTime's General Counsel promptly informed Reuters in writing that Reuters' option to purchase a perpetual license had expired. *Obrien Decl.*, Ex. A. Around that same time, FaceTime also verbally advised Reuters that the parties' Agreement had terminated according to its terms. *Moilliet Decl.* ¶¶ 2-3.

Moreover, Section 12.3 of the Agreement states that "[n]o changes, modifications, *or waivers* are to be made to this Agreement unless evidenced in writing and signed for and on behalf of both Parties." *Ambwani Decl.*, Ex. A (emphasis added). It is undisputed that the parties never signed any piece of paper indicating that FaceTime was waiving the deadlines under the Agreement, let alone the January 31 deadline for Reuters to exercise its option to purchase a perpetual license. Reuters' waiver argument therefore fails as a matter of law.

Reuters has cited no authority to support its position that the grantor of an option can waive its right to insist on strict compliance with the terms of the option where, as here, the parties' contracts contains an iron-clad "no waiver" provision. Instead, Reuters relies on *Madison Avenue Leasehold, LLC v. Madison Bentley Associates LLC*, 30 A.D.3d 1, 811 N.Y.S.2d 47 (1st Dep't 2006), which bears no resemblance to this case. In *Madison*, the court

11

applied "well-settled landlord-tenant law" to determine that a landlord who had continually accepted late rent payments could not invoke those late payments to establish a breach of the lease. In this case, however, FaceTime is not claiming that Reuters was in default of the Agreement by failing to make regular payments in a timely fashion. More importantly, *Madison* did not involve a provision that required waivers to be in writing and signed by both parties.

Similarly unconvincing is Reuters' reliance on *Dun & Bradstreet Corp. v. HarperCollins Publishers, Inc.*, 872 F. Supp. 103 (S.D.N.Y. 1995) (holding that owner of trade name waived its right to prepublication review by failing to object to publisher's conduct), and *Kenyon & Kenyon v. Logany LLC*, 33 A.D.3d 538, 823 N.Y.S.2d 72 (1st Dep't 2006) (holding that landlord waived its right to insist on written exercise of option when, for ten months, landlord accepted tenant's oral exercise of option). Neither of those cases involved a negotiated contract provision that precluded waivers unless they were "evidenced in writing and signed for and on behalf of both Parties." Therefore, like *Madison*, those cases are inapposite.

## III. REUTERS MUST CEASE USING FACETIME'S SOURCE CODE AND ALL OTHER "LICENSED MATERIALS" AS OF JULY 31, 2008.

Because Reuters failed to exercise its option to purchase a perpetual license by the January 31 deadline, Section 8.4.2 of the Agreement provided Reuters with a six-month "exit period" to continue using FaceTime's proprietary source code and any "Derivative Works" -- *i.e.*, software that Reuters has developed based on FaceTime's underlying proprietary source code, but which contains additional code and other enhancements that Reuters has written into the program. That "exit period" ends on July 31. After that period, Sections 2.7, 6.2 and 8.4.1 all make clear that Reuters will still own the intellectual property rights to its "Derivative Works," but will *not* be permitted to continue using FaceTime's underlying source code and associated technical materials (defined in Section 2.3 as the "Licensed Materials"). *Ambwani Decl.*, Ex. A.

Reuters now asks this Court to ignore the plain language in the Agreement, and suggests that it is "unclear" whether it can continue using "Derivative Works" that contain FaceTime's Licensed Materials after the July 31 deadline. *Def. Br.* at 21. Any conclusion that Reuters can continue using FaceTime's Licensed Materials as part of a "Derivative Work" after the expiration of the Agreement -- in perpetuity, no less -- would render the entire Agreement nonsensical. Indeed, if Reuters could continue using the Licensed Materials in perpetuity simply because it was once licensed to use those materials, there would have been no need to include an option to purchase a perpetual license in Section 6.2. And if Reuters automatically had the right to use FaceTime's Licensed Materials in perpetuity, there would have been no reason to include a six-month "exit period" in Section 8.4.2 for Reuters to have an orderly transition to a "Replacement Provider" responsible for "replacing the Licensed Materials and Related Materials in place of FaceTime after the termination of this Agreement or expiry of the Initial Term." *Ambwani Decl.*, Ex A § 8.4.2; *Supp. Obrien Decl.*, Ex. A (Definitions section of the Agreement).

Reuters' ownership of any intellectual property created by Reuters and embodied in the Derivative Works, as clearly stated in Sections 2.7 and 6.2, must not be confused with, and is in no way inconsistent with, the license restriction on Reuters' use of the Derivative Works after expiration of the Agreement. Reuters' ownership of the intellectual property embodied in the Derivative Works allows Reuters to exploit such intellectual property in works and/or inventions other than the Derivative Works. Sections 2.7 and 6.2 also make clear that FaceTime has no such ownership rights with regard to the Derivative Works or any intellectual property therein. However, independent of such ownership rights, the parties expressly agreed that Reuters would be prohibited from using the Licensed Materials and Derivative Works derived therefrom after expiration of the license. *Ambwani Decl.,* Ex. A §§ 6.2 and 8.4.1.

Reuters' argument regarding its "Derivative Works" has no support under the Agreement; nor can Reuters find any support under the law.  It is black letter copyright law that a derivative work is the intellectual property of the derivative author, but the elements drawn from the pre-existing work remain with the owner of the pre-existing work.  *See Stewart v. Abend*, 495 U.S. 207, 223-224, 110 S. Ct. 1750, 1761 (1990) ("a derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work") (internal citation omitted).  It is irrelevant whether the pre-existing work is inseparably intertwined with the derivative work. *See Gilliam v. American Broadcasting Cos.*, 538 F.2d 14, 20 (2d Cir. 1976) ("[C]opyright in the underlying script survives intact despite the incorporation of that work into a derivative work").  *See also* 1 *Nimmer on Copyright* § 3.07.

Accordingly, the plain language of the Agreement, the law, and common sense dictate that Reuters is no longer permitted to use FaceTime's source code in any manner or for any purpose.  As such, FaceTime seeks a declaration from the Court that the six-month "exit period" expires on July 31 -- and that Reuters must thereafter cease using FaceTime's proprietary source code.  Pursuant to Sections 6.2 and 8.4.1 of the Agreement, this includes use of any "Derivative Works" that are derived from and contain FaceTime's "Licensed Materials."

## IV.    REUTERS CANNOT CLAIM INADEQUATE DISCOVERY IN THIS MATTER BECAUSE IT FAILED TO SUBMIT A RULE 56(f) AFFIDAVIT.

Rule 56(f) requires a party opposing a motion for summary judgment on the basis of inadequate discovery to submit an affidavit setting forth the basis for the need for additional discovery.  *Citicorp Leasing, Inc. v. Kusher Family Ltd. Partnership*, 2006 WL 1982757, *6 (S.D.N.Y. July 14, 2006) (McMahon, J.).  A mere "reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit and the failure to file an affidavit under

Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).

Here, Reuters failed to submit a Rule 56(f) affidavit. Thus, to the extent Reuters is arguing that FaceTime's motion for summary judgment should be denied on the basis of inadequate discovery, such an argument fails. And in any event, as outlined above, no discovery is necessary in this case because the language in the Agreement is clear and unambiguous; it is undisputed that Reuters failed to exercise its purchase option by the January 31 deadline; and Reuters' cries of equity fail as a matter of law.

### CONCLUSION

For the foregoing reasons, FaceTime respectfully submits that its motion for summary judgment should be granted, and that the Court should declare that: *(1)* the Agreement terminated as of January 31, 2008 due to Reuters' failure to exercise its option by the contractual deadline, and *(2)* as of July 31, 2008, Reuters must cease using FaceTime's source code and the "Licensed Materials" in any manner and for any purpose.

Respectfully submitted,

Steven M. Hecht (SH-0414)
Jason Halper (JH-9957)
**LOWENSTEIN SANDLER P C**
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
973.597.2500
*Attorneys for Plaintiff*
*FaceTime Communications, Inc.*

By: /s  Steven M. Hecht (SH-0414)

Dated:  July 9, 2008

15

Steven M. Hecht (SH-0414)
Jason Halper (JH-9957)
**LOWENSTEIN SANDLER PC**
Attorneys at Law
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
*Attorneys for Plaintiff*
*FaceTime Communications, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FACETIME COMMUNICATIONS, INC., | **DOCUMENT ELECTRONICALLY FILED** |
| Plaintiff, | Civil Action No.  08-4730 (CM) |
| v. | |
| REUTERS LIMITED, | **CERTIFICATION OF SERVICE** |
| Defendant. | |

I, **JASON E. HALPER**, of full age, do hereby certify as follows:

I am an attorney with the firm Lowenstein Sandler PC, counsel for Plaintiff FaceTime Communications, Inc. ("FaceTime") in this matter.  I hereby certify that on July 9, 2008, I caused true copies of *(1)* FaceTime's Reply Memorandum of Law in support of its motion for summary judgment, and in opposition to Defendant Reuters' cross-motion to dismiss the complaint or for judgment on the pleadings, *(2)* the Supplemental Declaration of Jim Obrien, and *(3)* FaceTime's Responses to Reuters' Local Rule 56.1 Statement of Facts to be electronically filed with the Court, and served on the following via E-mail and FedEx:

James F. Rittinger
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, New York 10169
jrittinger@ssbb.com

Alexandre A. Montagu
The Thomson Reuters Building
3 Times Square
New York, New York 10036
alex@montagulaw.com

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

/s  Jason Halper (JH-9957)

Dated:  July 9, 2008