UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FACETIME COMMUNICATIONS, INC., | ECF FILED |
| Plaintiff, | |
| - against- | No. 08 Civ. 4730 (CM) (KNF) |
| REUTERS LIMITED, | |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
CROSS-MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS**

SATTERLEE STEPHENS BURKE & BURKE LLP

James F. Rittinger (JR-0556)
Justin E. Klein (JK-8865)
Glenn C. Edwards (GE-0696)

Attorneys for Defendant Reuters Limited
230 Park Avenue, Suite 1130
New York, NY 10169
(212) 818-9200

740770_4

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................i

I.    FACETIME HAS NOT REFUTED REUTERS' ARGUMENT THAT THIS
      COURT CAN AND SHOULD DECLINE TO GRANT THE DECLARATORY
      RELIEF SOUGHT BY FACETIME BECAUSE IT WILL NOT "FINALIZE
      THE CONTROVERSY" OR "OFFER RELIEF FROM UNCERTAINTY" ......................1

II.   FACETIME'S REPLY DEMONSTRATES THAT THIS IS A CLASSIC CASE
      OF DISPROPORTIONATE FORFEITURE AND THEREFORE EQUITY
      REQUIRES THAT REUTERS' BRIEF, INADVERTENT DELAY, WHICH
      CAUSED FACETIME NO PREJUDICE, BE EXCUSED .................................................5

III.  FACETIME HAS NOT COME FORWARD WITH ANY EVIDENCE
      CONTRADICTING REUTERS' SHOWING THAT FACETIME WAIVED
      STRICT COMPLIANCE WITH THE TIME LIMITS FOR EXERCISING
      THE PERPETUAL LICENSE OPTION ........................................................................8

IV.   FACETIME HAS NOT CARRIED ITS BURDEN OF COMING FORWARD
      WITH ANY EVIDENCE THAT COULD RAISE A TRIABLE QUESTION
      ON ISSUES THAT MIGHT OTHERWISE REQUIRE DISCOVERY ..............................9

CONCLUSION......................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

Civil Aeronautics Board v Delta Air Lines, Inc.,
    367 U.S. 316, 81 S. Ct. 1611 (1961) ..................................................................................4

Dow Jones & Co., Inc. v. Harrods, Ltd.,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003) .................1, 4, 5

Dun & Bradstreet Corp. v. HarperCollins Publishers, Inc.,
    872 F. Supp. 103 (S.D.N.Y. 1995) ....................................................................................9

Kenyon & Kenyon v. Logany, LLC,
    33 A.D.3d 538, 823 N.Y.S.2d 72 (1st Dep't 2006) ..........................................................9

M.V.B. Collision, Inc. v. Allstate Insurance Co.,
    No. 07-CV-0187, 2007 WL 2288046 (E.D.N.Y. Aug. 8, 2007) .........................................2

Madison Avenue Leasehold, LLC v. Madison Bentley Associates LLC,
    30 A.D.1, 811 N.Y.S.2d 47 (1st Dep't 2006),
    aff'd, 8 N.Y.3d 59, 828 N.Y.S.2d 254 (2006) ..................................................................8

N. Am. Airlines, Inc. v. Int'l Broth. of Teamsters, AFL-CIO,
    No. 04 Civ. 9949, 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) .........................................2

New York Times Co. v. Gonzales,
    459 F.3d, 160,167 (2d Cir. 2006) ......................................................................................1

O'Malley v. Ruggiero,
    245 A.D.2d 1129, 667 N.Y.S.2d 531 (4th Dep't 1997) ............................................. 5, 8-9

**STATUTES**

28 U.S.C. § 2201(a) ....................................................................................................................1

**MISCELLANEOUS**

Restatement (Second) Contracts § 229 .......................................................................................6

Defendant Reuters Limited ("Reuters"), by and through its attorneys, Satterlee Stephens Burke & Burke LLP, respectfully submits this reply memorandum of law in further support of its cross-motion to dismiss the complaint of FaceTime Communications, Inc. ("FaceTime") or for judgment on the pleadings.

I. **FACETIME HAS NOT REFUTED REUTERS' ARGUMENT THAT THIS COURT CAN AND SHOULD DECLINE TO GRANT THE DECLARATORY RELIEF SOUGHT BY FACETIME BECAUSE IT WILL NOT "FINALIZE THE CONTROVERSY" OR "OFFER RELIEF FROM UNCERTAINTY"**

FaceTime's Reply Memorandum (the "FaceTime Reply") does not deny—nor could it—that this Court has broad discretion concerning whether or not to exercise jurisdiction and issue a declaration of the parties' rights. See 28 U.S.C. § 2201(a); Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). Moreover, FaceTime does not deny that, when determining whether to grant a declaration, this Court should apply the five Dow Jones factors:

> (i) "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved"; (ii) "whether a judgment would finalize the controversy and offer relief from uncertainty"; (iii) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'"; (iv) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (v) "whether there is a better or more effective remedy."

New York Times Co. v. Gonzales, 459 F.3d 160, 167 (2d Cir. 2006) (quoting Dow Jones, 346 F.3d at 359-60).

Instead, FaceTime ludicrously purports to "distinguish" Dow Jones based on the underlying facts that the District Court applied to the Dow Jones factors. See FaceTime Reply at 4. It is clear from the Second Circuit's decision affirming the declaratory judgment standard, however, that such claimed factual differences are irrelevant to the controlling standard, set forth above, and that factors ii and iii, at the very least, cut strongly against declaratory judgment as a

remedy in this dispute. Indeed, it is clear that a declaration in FaceTime's favor would run afoul of Dow Jones factors (ii) and (iii) because such a declaration would neither "finalize the controversy" nor "offer relief from uncertainty." See, e.g., N. Am. Airlines, Inc. v. Int'l Broth. of Teamsters, AFL-CIO, No. 04 Civ. 9949, 2005 WL 646350 at *18 (S.D.N.Y. Mar. 21, 2005) (declining to assert jurisdiction because the action would not "settl[e] the legal relations between the parties, nor . . . terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the action"); M.V.B. Collision, Inc. v. Allstate Ins. Co., No. 07-CV-0187, 2007 WL 2288046 at *8-9 (E.D.N.Y. Aug. 8, 2007) (holding that the "Dow Jones factor, 'whether a judgment would finalize the controversy and offer relief from uncertainty' weighs against declaratory relief"). As set forth in Reuters' moving brief, FaceTime's request is nothing more a stalking horse for the next litigation that FaceTime aspires to bring.

Specifically, FaceTime's Reply exposes its previously hidden agenda—a stratagem to seize upon a harmless oversight as a pretext for attacking Reuters' continued use and enjoyment of the "Derivative Works" that Reuters has created at an expense of more than $2,000,000 on top of the $1,300,000 in licensing fees previously paid to FaceTime. See FaceTime Reply at 2. Indeed, FaceTime's Reply makes evident what its complaint does not—namely that, in the event that it obtains a declaration that the licensing agreement is deemed terminated, FaceTime is not merely seeking to have Reuters return the FaceTime source code, object code, and documentation. Rather, FaceTime evidently believes that the egg must be unscrambled and any vestiges of its source code must be purged from the Derivative Works (see FaceTime Reply at 2, 13, and 14) even though, as even FaceTime itself admits, under the terms of the Agreement Reuters is entitled to "maintain ownership" of the Derivative Works even if the license agreement is terminated. Compare Complaint at ¶ 1 ("[t]he sole question is whether the parties'

740770_4

written Source Code Licensing Agreement (the "Agreement") has expired") with FaceTime Reply at 5 ("the Agreement makes clear that Reuters is entitled to maintain ownership over the Derivative Works" but can't use or sell them); see also Agreement Sections 2.7 and 6.2.

In short, it is now clear that, just as Reuters explained in its previous brief, the only way that the relief requested by FaceTime could end this dispute would be if this Court were to issue a declaration in Reuters' favor (*i.e.*, that the option was, in fact exercised).[1]  A declaration in FaceTime's favor is merely a prescription for new and expanded litigation.  Specifically, if a declaration were issued in FaceTime's favor, then this expanded litigation would, as set forth in Reuters' previous brief, involve a series of problematic legal and factual disputes, including but not limited to the following:

- Whether the Derivative Works as currently used in the Reuters Messaging Service contain protected elements of the Licensed Materials, or whether Reuters has transformed them so that they are not substantially similar to the Licensed Works and do not violate the Agreement;

- Whether continued use of the Derivative Works by Reuters, if prohibited, results in any copyright (or other intellectual property) claims or purely contractual ones;

- Whether use of the Derivative Works is prohibited by § 8.4.1 of the Agreement, and whether this provision is consistent with the ownership of the Derivative Works vested in Reuters by § 2.7, or whether these provisions create an ambiguity that must be resolved; and

---

[1]  In its Reply, FaceTime, by truncating two sentences from Reuters' brief in a misleading fashion, seriously misconstrued Reuters' argument on this point.  Reuters never said (as FaceTime falsely contends) that the "only way" to bring the parties' dispute to an end is for the Court to find for Reuters.  See FaceTime's mischaracterization at page 4 of the FaceTime Reply.  To the contrary, Reuters made the more meticulous point that "even if granted, the declaration sought by [FaceTime]—that the Agreement terminated as of January 31, 2008—will do very little, if anything, to address the real controversy between the parties."  See Reuters' Br. at 8.  Reuters then went on to explain, also correctly, that "only a contrary finding, *i.e.*, that Reuters' exercise of the Perpetual License Option was effective, would actually bring an end to the parties' dispute."  Id.

3

- The extent to which damages for any prohibited use would be limited by the damage limitations provisions in § 9.2 of the Agreement (including a determination, if appropriate, of the "reasonable fees" for any such use).

See Reuters Br. at 9.

In its Reply, FaceTime ironically underscores the fact that these are, in fact, matters of intense dispute that will inevitably have to be resolved by further litigation, if a declaration issues in FaceTime's favor. For example, in its Reply, FaceTime devotes an entire point to arguing issues of contractual interpretation concerning what (in FaceTime's view) Reuters can and can't do with the Derivative Works, if this Court were to rule that the Agreement has been terminated.[2] See FaceTime Reply Point III, at 12-14. It could scarcely be clearer that, just as Reuters predicted, and as FaceTime knows full well, a declaration that the Agreement is terminated will lead inevitably to further litigation over "whether the Derivative Works as currently used in the Reuters Messaging Service in any way contain the Licensed Materials, or whether they have been so transformed by the work of Reuters so that they are not substantially similar to the Licensed Works nor their use a breach of contract." See Reuters Br. at 9. This is precisely the lack of finality that, under the Dow Jones factors, calls for the Court to exercise its discretion to decline to grant the declaratory relief sought by plaintiff.

Furthermore, FaceTime does not even attempt to dispute Reuters' point that a declaration in FaceTime's favor will surely lead to litigation over: whether Reuters' continued use of components of the Derivative Works is a copyright infringement or breach of contract or neither;

---

[2] As a further preview of disputes to come, it appears that FaceTime would now like to apply the definition of "derivative works" in the Copyright Act to the interpretation of the parties' respective rights, rather than the different definition of "Derivative Works" in the Agreement. See FaceTime Reply at 14. This is a classic example of the fallacy of the transplanted category. Cf. Civil Aeronautics Bd. v Delta Air Lines, Inc., 367 U.S. 316, 81 S.Ct. 1611 (1961) ("The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has, and should have precisely the same scope in all of them runs all through legal discussions. It has all the tenacity of original sin . . . ").

4

740770_4

whether Section 8.4.1 paradoxically prohibits all use of the Derivative Works despite the statement in Section 2.7 that Reuters <u>owns</u> the Derivative Works; and whether Reuters continued use of the Derivative Works gives rise to any damages and if so whether those damages are limited by Section 9.2 of the Agreement, among many other issues.

In short, a declaration in FaceTime's favor would, at best, serve only to create a cloud of doubt as to the scope of Reuters' ongoing rights in the Derivative Works. "[R]ather than definitively settling the rights of the parties, this Court's exercise of jurisdiction would spur more litigation." <u>Dow Jones & Co., Inc. v. Harrods, Ltd.</u>, 237 F. Supp. 2d 394, 437 (S.D.N.Y. 2002), <u>aff'd</u>, 346 F.3d 357 (2d Cir. 2003). Accordingly, Reuters respectfully submits that this Court should decline to exercise its discretion to grant declaratory judgment. <u>See</u> <u>Dow Jones & Co., Inc. v. Harrods, Ltd.</u>, 346 F.3d at 359-60.

## II. FACETIME'S REPLY DEMONSTRATES THAT THIS IS A CLASSIC CASE OF DISPROPORTIONATE FORFEITURE AND THEREFORE EQUITY REQUIRES THAT REUTERS' BRIEF, INADVERTENT DELAY, WHICH CAUSED FACETIME NO PREJUDICE, BE EXCUSED

As detailed in Reuters' Brief, the delay of a mere two weeks in exercising the option may, and should, be excused if (1) the failure was inadvertent; (2) FaceTime has suffered no prejudice (*e.g.*, the time of the final payment was not a material part of the agreed exchange); and (3) Reuters would suffer disproportionate forfeiture. In its opposition and reply brief, FaceTime again failed to establish its entitlement to summary judgment with respect to these elements. <u>See</u> <u>O'Malley v. Ruggiero</u>, 245 A.D.2d 1129, 1130, 667 N.Y.S.2d 531, 532 (4th Dep't 1997) (denying summary judgment where moving party, contending failure to exercise option, had not carried its initial burden with respect to inadvertence and harm and opposing party had raised

5

issues of fact with respect to forfeiture). See generally FaceTime's Responses to Reuters' Rule 56.1 Statement ("FaceTime Response").[3]

As to the element of inadvertence, FaceTime:

* Does not deny that no one from FaceTime notified Reuters in advance of January 31 that the option date was approaching (Lamb Decl. ¶¶ 3, 4, 9, 11; FaceTime Reply at 6);

* Does not deny that FaceTime had agreed to a practice of invoicing Reuters for prior payments under the License Agreement, but did not do so with respect to the January 31 payment (Lamb Decl. ¶¶ 4, 9, 12);

* Does not come forward with one iota of evidence suggesting that Reuters was aware of the January 31 date, but made a conscious decision to delay payment or not to exercise the option (FaceTime Response);

* Does not contradict Reuters' accounting records and testimonial evidence indicating that Reuters always planned to make all payments, including the final $150,000 payment (Hadley Decl. ¶¶ 2-13; Barak Decl. ¶¶ 8-17; Lamb Decl. ¶¶ 11-13);

* Does not come forward with any evidence whatsoever that Reuter's delay was anything other than a harmless oversight—a simple human error by an employee who failed to make note of the January 31 date that was embedded in a separate paragraph of the Agreement from the "block quoted" dates for all other payments (Lamb Decl. ¶¶ 2-13);

As to the element of the absence of prejudice to FaceTime:

* Does not claim that anyone at FaceTime ever suggested during the negotiation or performance of the Agreement that the January 31 date was a material term (FaceTime Response; Barak Decl. ¶ 24);[4]

* Does not deny that FaceTime's license to Reuters was non-exclusive and therefore (a) FaceTime was at all times free to license its software to an unlimited number of licensees, and (b) the delay in payment did not in

---

[3] Nowhere in its Reply does FaceTime address Restatement (Second) Contracts § 229 or gainsay the other authorities cited by Reuters demonstrating the equitable rule against disproportionate forfeitures has general application and is by no means limited to the context of real estate, as FaceTime would have it. Moreover, the real estate cases cited at page 7 of FaceTime's reply simply do not address the equitable rule against disproportionate forfeitures.

[4] Significantly, in the section of the Agreement relating to "verification testing" of the code delivered by FaceTime, the parties expressly provided that "time is of the essence." See Agreement § 4.4. By contrast, in the sections of the Agreement relating to "lease payments" and the option, the parties omitted the phrase "time is of the essence." See Agreement §§ 6.1 and 6.2.

6

any way interfere with FaceTime's ability to make use of the Licensed Materials or to license them to others (Agreement §§ 2.3, 6.2);[5]

* Does not claim that it has lost one red cent or suffered any non-pecuniary harm as a result of the short delay (FaceTime Reponse);

As to the element of <u>disproportionate forfeiture</u> by Reuters if it loses the opportunity to exercise the option, FaceTime:

* Does not deny that Reuters made at least $1,300,000 in prior payments to FaceTime in reliance on being able to exercise the option and continue to use all components of the Derivative Works (Barak Decl. ¶ 19);

* Does not deny that Reuters invested at least $2,000,000 on top of the prior license fees—as well as countless hours of work—to integrate, improve upon, and customize the Licensed Materials in order to create Derivative Works (Demirtjis Decl. ¶¶ 6-8, Barak Decl. ¶¶ 19-20);

* Does not deny that Reuters has no practical immediate substitute for the Derivative Works (Barak Decl. ¶¶ 21-25).

* Does not deny that at least one hundred business entities worldwide that use Reuters Messaging Services would suffer irreparable harm if FaceTime succeeds in its calculated effort to pull the plug on the service (Barak Decl. ¶¶ 21-25); and

* Cannot deny that Reuters would suffer incalculable damage in terms of lost customer goodwill if it could not continue to use some or all of the Derivative Works (Barak Decl. ¶¶ 31-32).

Despite this total failure of proof, FaceTime persists in playing a game of "gotcha," arguing that this Court should disregard long-established principles of equity and grant FaceTime declaratory relief that would cause a senseless forfeiture at a cost of million of dollars. As explained above, FaceTime's actual agenda is to pull the plug on the continued use by Reuters and its many

---

[5] This point suggests that the policy favoring the avoidance of forfeiture is, if anything, more appropriate in this case than in the cases involving real estate options, where the buyer has improved the premises but failed to timely exercise the option. In the real estate cases, only one party can occupy or own the premises at any given time. Therefore, the uncertainty as to the tenant's intentions caused by a delay in the exercise of an option temporarily interferes with the full enjoyment by the landlord of his or her property—*e.g.*, the right to sell it to another or re-occupy it himself. By contrast, because the license (and option) to the FaceTime software is non-exclusive, there was never the slightest interference with FaceTime's full enjoyment of its rights in its intellectual property.

customers of components of the Derivative Works, which Reuters created, and which constitute exactly the kind of property—built and enhanced by Reuters at a great expense of time, effort, and money—that is covered by the rule against forfeitures. Reuters' inability to continue to use the property it created would have devastating results—a classic case of forfeiture.

In short, Reuters is facing a huge forfeiture if it is deprived of use of some or all of the Derivative Works, whereas FaceTime has suffered no prejudice at all from the brief delay in receiving full payment. In light of the undisputed and unrebutted evidence put forward in Reuters' submissions, Reuters respectfully submits that equity requires that, at the very least, FaceTime's motion for summary judgment be denied. See O'Malley v. Ruggiero, 245 A.D.2d 1129, 1130, 557 N.Y.S.2d 531, 532 (4th Dep't 1997).

### III.    FACETIME HAS NOT COME FORWARD WITH ANY EVIDENCE CONTRADICTING REUTERS' SHOWING THAT FACETIME WAIVED STRICT COMPLIANCE WITH THE TIME LIMITS FOR EXERCISING THE PERPETUAL LICENSE OPTION

In its opposition and cross-motion, Reuters presented evidence that FaceTime has:

* Routinely accepted delayed payments under the Agreement without objection (Lamb Decl. ¶¶ 9-10); and

* Expressly agreed to invoice Reuters as a precondition for receiving payments under the Agreement (Lamb Decl. ¶¶ 4, 9, 12).

In its Reply, FaceTime came forward with no evidence to controvert the facts set forth in the Lamb declaration concerning waiver. Instead, FaceTime's <u>lawyers</u> say that there was no "intention" on FaceTime's part to waive its right to require timely payments. But FaceTime did not put in an affidavit from any FaceTime employee to that effect. As a result, the only admissible evidence before this Court establishes that there was indeed conduct that, under applicable New York law, would constitute a waiver. See Madison Ave. Leasehold, LLC v.

Madison Bentley Assocs. LLC, 30 A.D.1, 4-6, 811 N.Y.S.2d 47, 50-51 (1st Dep't 2006), aff'd, 8 N.Y.3d 59, 828 N.Y.S.2d 254 (2006).

FaceTime's only other argument is the manifestly incorrect assertion that no waiver is possible in the face of a no oral modifications or waivers clause in Section 12.3 of the Agreement. It is well settled under New York law that a "no oral waiver" clause can itself be waived by the parties. See Dun & Bradstreet Corp. v. HarperCollins Publishers, Inc., 872 F. Supp. 103, 110 (S.D.N.Y. 1995); Kenyon & Kenyon v. Logany, LLC, 33 A.D.3d 538, 539, 823 N.Y.S.2d 72, 74 (1st Dep't 2006) ("The existence of a nonwaiver clause does not in itself preclude waiver of a contract clause."). FaceTime claims that the cases are distinguishable on the basis of the language of the contracts at issue, but the cases themselves do not support the distinction that FaceTime claims to draw.

### IV. FACETIME HAS NOT CARRIED ITS BURDEN OF COMING FORWARD WITH ANY EVIDENCE THAT COULD RAISE A TRIABLE QUESTION ON ISSUES THAT MIGHT OTHERWISE REQUIRE DISCOVERY

Plaintiff's final argument, that "Reuters cannot claim inadequate discovery in this matter because it failed to submit a Rule 56(f) affidavit," is a red herring. Indeed, as Reuters' opposition to plaintiff's summary judgment makes clear, plaintiff failed to carry its own burden concerning any prejudice it would suffer if Reuters' late exercise of the option were excused. Accordingly, and because Reuters put forth unrefuted affidavits establishing forfeiture, no discovery is necessary for the Court to *deny* plaintiff's motion for summary judgment.

While plaintiff erroneously makes much of the reference to Rule 56(f) contained in Reuters' opposition, it is clear that any such reference necessarily assumed, *arguendo*, that plaintiff might at least attempt to make some showing of prejudice attributable to the brief delay in the final payment under the Agreement. But, as set forth in Reuters' opposition (and is undisputed in plaintiff's reply), FaceTime made no such showing. Therefore, Rule 56(f) is not

9

implicated, and the Court should summarily reject plaintiff's suggestion that Reuters was required to submit an affidavit in support of Rule 56(f).[6]

## CONCLUSION

Because plaintiff's requested declaratory relief will not settle the legal relations between the parties, nor will it terminate and afford relief from the uncertainty, insecurity, and controversy regarding the use of the Derivative Works, the Court should decline to issue declaratory relief for FaceTime and should instead dismiss the complaint. If, however, the Court is inclined to address the merits, plaintiff has by no means demonstrated that it is entitled to summary judgment. To the contrary, Reuters has shown that equity requires that the short delay in making of the final payment be excused and the option be deemed to have been exercised. Therefore, Reuters respectfully requests that the Court dismiss the complaint or, in the alternative, deny plaintiff's motion for summary judgment.

Dated: New York, New York
July 16, 2008

Respectfully submitted,

SATTERLEE STEPHENS BURKE & BURKE LLP

By: /s/
James F. Rittinger (JR-0556)
Justin E. Klein (JK-8865)
Glenn C. Edwards (GE-0696)
230 Park Avenue
New York, NY 10169
(212) 818-9200
Attorneys for Defendant Reuters Limited

---

[6] Similarly, FaceTime came forward with no affidavits on reply to respond to Reuters' declarations demonstrating that FaceTime, by its conduct in routinely accepting without complaint late payments in the past, waived the right to insist on strict compliance with January 31 date for exercise of the perpetual license agreement. Here, again, if FaceTime had come forward with any alleged facts regarding the absence of conduct by its officers and employees indicating waiver, discovery might have been needed. It did not and, again, Rule 56(f) is not implicated. See FaceTime Reply at 10-12.

10

740770_4